## CONWAY et al. v. UNITED STATES.

(Circuit Court of Appeals, Seventh Circuit. July 16, 1924. Petition for Rehearing Overruled September 19, 1924.)

No. 3374.

1. **Post office ☞45—Both assault of mail messenger and intent to rob essential to crime defined by federal statute.**

To constitute the offense of assault on a mail messenger with intent to rob, defined by Penal Code, § 197 (Comp. St. § 10367), both elements, assault and intent to rob, are essential.

2. **Post office ☞45—One staging fake holdup of mail messenger without intent to injure held not guilty of "assault" under statute.**

One who, pursuant to an agreement with a mail messenger, staged a fake holdup, confronted messenger with gun, and apparently compelled his surrender, but who at no time had any actual intent to injure, held not guilty of "assault" on such messenger with intent to rob, within Penal Code, § 197 (Comp. St. § 10367).

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Assault.]

3. **Criminal law ☞37—Defense of entrapment by government agents held not available.**

Where defendants, charged with conspiracy to steal registered mail, had entered into an agreement with a mail messenger under which they were to stage fake holdup, but were betrayed by messenger, who advised postal authorities, held, defense of entrapment by agents of government was not available.

4. **Criminal law ☞619—Indictments for conspiracy to steal registered mail and assault with intent to rob held properly consolidated for trial.**

Indictments of two persons for assault on a mail messenger with intent to rob and conspiracy to steal registered mail held properly consolidated for trial under Rev. St. § 1024 (Comp. St. § 1690).

In Error to the District Court of the United States for the Southern Division of the Southern District of Illinois.

Patrick Conway, alias Paddy Conway, was convicted of assault on mail messenger with intent to rob, and jointly with Hunter Dalton was convicted of conspiracy to steal registered mail, and they bring error. Judgment of conviction for assault with intent to rob reversed, and judgment of conviction for conspiracy to steal affirmed.

Harold J. Bandy, of Granite City, Ill., for plaintiffs in error.

Thos. Williamson, U. S. Atty., of Springfield, Ill., Wm. B. Schroder, Asst. U. S. Atty., of Peoria, Ill., and Thomas F. Smith, Asst. U. S. Atty., of Springfield, Ill., for the United States.

Before ALSCHULER and EVANS, Circuit Judges, and FITZHENRY, District Judge.

ALSCHULER, Circuit Judge. Plaintiffs in error Conway and Dalton were tried on two indictments, consolidated for trial—one charging them with making with a dangerous weapon an assault on one La Mott, a mail messenger, having in his custody registered packages of mail of great value, and putting his life in jeopardy, with the intent to rob La Mott of the registered packages of mail, and to steal same; the other, with conspiracy to commit an offense against the United States of stealing the registered mail packages above described from the United States while they were being conveyed by La Mott, their lawful custodian. On the first indictment Conway alone was convicted, and sentenced to eight years' imprisonment and $5,000 fine. On the second both

were convicted, and each sentenced to two years' imprisonment and $10,000 fine.

Respecting the conviction for assault it is claimed there was no evidence showing an assault was committed. The undisputed fact is that La Mott, a post office clerk or messenger, who carried the registered mail in question, entered into an understanding with Dalton whereby Dalton was to be informed when La Mott would be carrying certain registered pay roll packages containing about $100,000, and Dalton, with such assistance as he would enlist, would take the packages from La Mott, and convey them to some place where the proceeds would be divided between the three participants in the transaction. But La Mott all the time kept the postal authorities informed of the plot, in order that the others who entered into the agreement might be taken in the act, and prosecuted and punished for it.

In further pursuance of the arrangement between Dalton and La Mott, Dalton enlisted the service of Conway, and the three got together and planned the details—La Mott to drive his car carrying the packages past a certain place, where Conway was to get on and point a gun at La Mott, who would go through the act of giving up, and then, under the apparent coercion of Conway's gun, drive the car to where Dalton would be waiting, and the proceeds there divided. The details were carried out substantially as planned, up to the time that Conway mounted La Mott's car and presented his gun at or against La Mott, and the latter surrendered control of the car and contents, whereupon postal officers, who, by arrangement with La Mott, were hiding at this place, seized the outfit and, driving to the place where Dalton was waiting, arrested him there. Do these conceded facts show an assault by Conway upon La Mott as charged in the indictment?

The statute under which the assault indictment was predicated is: "Whoever shall assault any person having lawful charge, control, or custody of any mail matter, with intent to rob, steal, or purloin such mail matter or any part thereof, or shall rob any such person of such mail or any part thereof, shall, for a first offense, be imprisoned," etc. Section 197, U. S. Penal Code (Comp. St. § 10367).

[1] To sustain this charge two elements are indispensable: An assault on some person of the class indicated, and intent of the assailant to rob or steal mail matter in the possession of such person. Of the intent to steal mail matter there is no question.

But what is there in this state of facts that indicates an assault upon La Mott? In defining the offense, its limitation to those having lawful charge of mail matter does not in any manner change the requirement of an assault. An assault in contravention of this statute is not otherwise or different from any other assault which the law defines and punishes. Notwithstanding it specifies a particular class of persons as the subject of the assault, and the specific intent as necessary to constitute the crime denounced by the section, the well-recognized elements of an assault must be present to constitute this offense.

Bishop (2 New Crim. Law [8th Ed.] 23) defines an assault to be: "Any unlawful physical force, partly or fully put in motion, creating reasonable apprehension of immediate physical injury to a human being." Russell (1 Crimes, 1019) says: "An assault is an attempt or offer with force and violence to do a corporal hurt to another. * * * So drawing a sword or bayonet * * * and presenting a gun at a person who is within the distance to which the gun will carry * * * or any other similar act accompanied with such circumstances as denote at the time an intention coupled with a present ability of using actual violence against the person of another will amount to an assault." Wharton (1 Crim. Law, 603) says it is "an apparent attempt by violence to do corporal hurt to another." Stealing United States mail without assault on some person would not be punishable under this section; it being directed only against assault with the specific intent to rob or steal mail. The indictment is not for stealing from the mails, but for making an assault on the person named, with the specific intent charged.

The evidence conclusively establishes that Conway had not the remotest intent of injuring or terrifying La Mott, or coercing him in any degree, nor does it show that La Mott was injured or coerced or terrified into doing anything that he did not in advance distinctly know and understand and agree he was to do. True, he says he was in fear while Conway was standing there with his gun pointed directly at him or against him. But it was evidently that fear only which would come from a possible suspicion that Dalton might prove untrue to his undertaking with La Mott, as La Mott certainly proved untrue to his undertaking with Conway, or perhaps from that wholesome fear which sometimes arises in cautious men from the danger of handling even "unload-

ed" guns. But such fears were only those that La Mott had contracted for, and that he might well have known in advance would arise in such a situation. It does not appear that Conway in any way exceeded the force he had agreed to exert, or transgressed in kind, quality, or quantity his part in the terrorizing show they had agreed to stage.

[2] In our view, there is shown here no more of an assault than would appear in a theatrical performance where the villain, following the plot of the play, draws his gun upon the hero and thereby holds him in apparent submission. And the circumstances that our hero may have a lurking fear that the villain might be a villain in fact as well as in play, or that the gun might accidentally be discharged and do him bodily harm, would in no manner import the criminal element of assault in such pointing of the gun. Of whatever offense Conway may be guilty for his part in the transaction, assault on La Mott is not one, and his conviction under an indictment charging it cannot be sustained.

That there was a conspiracy there can be no question. The evidence of Dalton and Conway conclusively shows this. But the conspiracy charges, and the evidence shows, that the offense conspired to be committed was that of stealing valuable registered mail of the United States then in the custody of La Mott. Certain it is that this was the object of the conspiracy, regardless of how it was to be effected. The testimony of Dalton and Conway shows conclusively their conspiracy to steal mail matter.

[3] The defense of entrapment by agents of the government is urged, but it does not seem to us to be here applicable, even as suming the truth of the highly improbable testimony of Dalton and Conway on that subject. There was surely no such entrapment as was held improper in this court in Voves v. United States, 249 Fed. 191, 161 C. C. A. 227, where it appeared that the agents of the government beguiled the defendant into the belief that his act was lawful. Certainly nothing that was done by La Mott or any one else on behalf of the government tended to induce in these parties the state of mind that the contemplated enterprise was a lawful one. Assuming, as we must, their sanity, we must further assume that they appreciated the highly criminal nature of the undertaking, and, whatever may have been the preliminaries, they actively planned to carry it out. The details to which they themselves testified manifested such a familiarity with criminality and willingness to enter upon it, as would take this out of the operation of the general principle of entrapment as has been declared by this and other courts. Dalton, without suggestion from any one, had ready access to one who was to be trusted with the details of carrying out this their contemplated theft of mail, and had no difficulty in having him there at call, and Conway's readiness and adeptness in such matters was most apparent. Dalton disapproved of La Mott's suggestion as to details, and himself laid the plans, which were substantially carried out up to the time of interruption by the government officers.

Complaint is made of the court's charge upon the subject of entrapment. As to the law the charge was as favorable to plaintiffs in error as was in any case warranted; and its comment on the facts, under the peculiar circumstances here presented, shows no harmful error, if, indeed, any error at all.

[4] The contention of error in the consolidation for trial of these indictments is without merit. It was such consolidation only as is contemplated by section 1024, Rev. St. U. S. (Comp. St. § 1690).

The judgment upon the indictment for assault (No. 17239) is reversed. The judgment upon the indictment for conspiracy (No. 17238) is affirmed.