STATE OF MONTANA, PLAINTIFF AND RESPONDENT, *v.* LEWIS PARR, DEFENDANT AND APPELLANT.

No. 9473.
Submitted February 8, 1955. Decided May 20, 1955.
Modified June 7, 1955. Rehearing Denied June 8, 1955.
283 Pac. (2d) 1086.

Mr. Justices Davis and Anderson dissented.

DeKalb, Dockery & Symmes, Lewistown, (Weymouth D. Symmes & Raymond E. Dockery, Jr., Lewistown, of counsel) for appellant.

Arnold H. Olsen, Atty. Gen., Hubert J. Massman, Asst. Atty. Gen., J. E. McKenna, Co. Atty., Lewistown, for respondent.

Mr. Symmes and Mr. Massman argued orally.

MR. JUSTICE ANGSTMAN:

Defendant appealed from a judgment of conviction entered upon a verdict of a jury finding him guilty of selling liquor to a minor and from an order denying his motion for a new trial.

Jerry Gallagher, a minor, went with the probation officer, Jordan Gore, the county attorney of Fergus County and the state liquor inspector, Marion McCullum, to the town of Grass Range, where the defendant operated a bar. Upon arriving there at about 9 p.m. on March 5, 1953, the probation officer gave Gallagher a ten dollar bill and told him to ''go in and buy me a bottle of whiskey.'' Gallagher went to defendant's bar. The county attorney and the liquor inspector placed themselves in a position in front of the window of the bar and they testified that they saw defendant sell a bottle of whiskey to Gallagher.

After Gallagher purchased the whiskey he returned to the car wherein Mr. Gore had stayed and gave the whiskey to Mr. Gore along with $4.00. Both of the witnesses at the window testified that they had observed Gallagher talking to defendant, receiving a bottle of whiskey from defendant and exchanging what they believed to be money and leaving the bar with the whiskey. The transaction in connection with the purchase of the whiskey took but two to four minutes.

The bottle of whiskey was properly marked for identification and was introduced in evidence at the trial.

The defendant testified that he had known Jerry Gallagher and that he was positive he did not sell him whiskey on the night in question.

Mrs. Parr and two other witnesses called for the defense testified to the same general effect.

The defendant assigns sixteen specifications of error, some of which are repetitious and overlapping, but in the aggregate they present the following legal questions:

1. Did the act of the officers in enlisting the aid of a minor to purchase liquor from the defendant constitute entrapment so as to entitle defendant to an instruction on that subject?

2.  Was it reversible error for the state not to subpoena Gallagher as a witness?

3.  Do the verdict and judgment rest upon the uncorroborated testimony of accomplices?

The court was right in refusing to instruct the jury on the ██ question of entrapment. In the case of State v. O'Brien, 35 Mont. 482, 90 Pac. 514, 520, the court said: ''The defendant's motion for direction of a verdict in his favor at the close of the state's case was properly denied. The evidence submitted shows, *prima facie,* a sale of whisky in violation of the statute. The question of defendant's guilt was one for the jury. But it is argued that it appeared therefrom that the county attorney had furnished the money with which the purchases were made by the state's witnesses, and that, since the prosecuting officer had himself thus induced the violation of the law, a conviction could not be had. Such evidence is always competent (In re Wellcome, 23 Mont. 450, 59 Pac. 445), and it is no defense to a prosecution of this kind that the purchase was made by a spotter, a detective, or hired informer. 23 Cyc. 184; 12 Cyc. 447.''

In 18 A.L.R. 162, it is said: ''The great weight of authority supports the view that a person making an unlawful sale of liquor is not excused from criminality by the fact that the sale is induced for the sole purpose of prosecuting the seller.''

This rule has been applied in many cases in this state involving matters other than the sale of intoxicants, some being State v. Neely, 90 Mont. 199, 300 Pac. 561; State v. Neidamier, 98 Mont. 124, 37 Pac. (2d) 670; State v. Snider, 111 Mont. 310, 111 Pac. (2d) 1047, and State v. Wong Hip Chung, 74 Mont. 523, 241 Pac. 620.

In the Snider case [111 Mont. 310, 111 Pac. (2d) 1049] the court pointed out the '' 'distinction between inducing a person to do an unlawful act and setting a trap to catch him in the execution of criminal designs of his own conception.' ''

In the case of Sorrells v. United States, 287 U.S. 435, 53 S. Ct. 210, 212, 77 L.Ed. 413, 86. A.L.R. 249, the court stated that ''the fact that officers or employees of the government merely

afford opportunities or facilities for the commission of the offense does not defeat the prosecution.''

In 15 Am. Jur., Criminal Law, section 335, at page 24, it is said: ''It may therefore be stated as a general rule that where the doing of a particular act is a crime regardless of the consent of anyone, the courts are agreed that if the criminal intent originates in the mind of the accused and the criminal offense is completed, the fact that an opportunity is furnished or that the accused is aided in the commission of the crime in order to secure the evidence necessary to prosecute him therefor constitutes no defense. To the argument that the act is done at the instigation or solicitation of an agent of the government, the courts have responded that the purpose of the detective is not to solicit the commission of the offense, but to ascertain if the defendant is engaged in an unlawful business. It is no defense that a person, acting as a decoy, furnished an opportunity for the commission of the offense. Such conduct is held not to procure the offense to be committed, the theory being that the offender acts of his own volition and is simply caught in his own devices.''

Counsel for the appellant contends this case falls within an exception to the general rule. He contends that where the decoy is one of concealed disability the entrapment is a defense to the prosecution. He relies on United States v. Healy, D. C. 1913, 202 F. 349, and Voves v. United States, 7 Cir., 1918, 249 F. 191.

The record here does not show any concealed disability on the part of Jerry Gallagher, the minor. The only evidence bearing on the subject is that Gallagher had the usual ''kid'' whiskers. He had no false whiskers, nor was he in any way disguised. There was no evidence that he looked older than 21 years (even though it be assumed that such fact would be material). Even the defendant, who testified that he knew him well, would not say that he thought he was over 21 years of age. He testified:

''Q. You know he is a minor, you know he is under the age

of 21 years? A. I don't know that, he's pretty well growed up.

Q. You know he is under 21. A. I thought he was around 21."

Defendant's counsel contends that some of his offered evidence of concealed disability was improperly excluded. He contends that it was error to exclude a photograph of Jerry Gallagher taken about one year and two months after the purchase of the whiskey here involved, and which was offered in evidence as a part of the cross-examination of Jerry's mother. This was objected to as being improper cross-examination and as serving no purpose. The court properly excluded this offered exhibit. It was improper cross-examination, and the photograph having been taken more than a year after the offense was committed was no evidence of Jerry's appearance at the time he purchased the whiskey from defendant (if that be material). Neither the evidence which was received nor that which was offered and excluded showed any concealed disability so as to bring this case within the cases relied on by appellant's counsel.

In the case of United States v. Healy, D.C., 202 F. 349, relied on by appellant, it was stated by the court that "nothing in the latter's [speaking of the decoy] dress, speech, manner, or appearance served to put him [defendant] on inquiry therein". Here, so far as this record is concerned, Jerry's speech, manner and appearance were typical of those of a boy of his age. Defendant's own testimony was sufficient to place him on inquiry when he said he thought he was around 21. It was his duty before selling whiskey to him to make sure that he was over 21.

The case of Voves v. United States, 7 Cir., 249 F. 191, is also much different from this case. There the government's conduct misled the defendant into believing that the Indian decoy was a Mexican. Here the government made no respresentation whatsoever. Something more than the mere use of decoys by the government is necessary to raise an issue of entrapment

or estoppel. Goldstein v. United States, 7 Cir., 256 F. 813; Casey v. United States, 276 U.S. 413, 48 S. Ct. 373, 376, 72 L.Ed. 632. Even the dissenting opinion of Mr. Justice Brandeis in the last cited case, so strongly relied on in the dissenting opinion of Mr. Justice Davis herein, states: "The government may set decoys to entrap criminals. But it may not provoke or create a crime and then punish the criminal, its creature." In that case there was evidence that the officers instigated and induced the commission of the crime, or at least that is the basis upon which the opinion of Mr. Justice Brendeis rests. No one provoked or created the crime here, other than the defendant himself.

There is nothing in the record to indicate that Jerry or the officers did anything in the way of inducing or procuring defendant to sell the whiskey to Jerry other than to place him at the bar with money in hand to purchase the whiskey in the ordinary course of trade. The evidence here comes squarely within the rule stated in the majority opinion in the Casey case written by Mr. Justice Holmes wherein he stated: "Furthermore Casey according to the story, was in no way induced to commit the crime beyond the simple request of Cicero to which he seems to have acceded without hesitation and as a matter of course. * * We are not persuaded that the conduct of the officials was different from or worse than ordering a drink of a suspected bootlegger." The court in the Casey case divided on a fact issue as to whether the officers instigated or induced the crime. There is no evidence of inducement or instigation here.

The decided weight of authority holds that defendant's ig- ▮ norance that the buyer was a minor, or bona fide belief that he was of legal age, is no defense unless expressly made so by statute. Annotation 115 A.L.R. 1230. Our statute does not recognize this as a defense.

The defense of entrapment is an affirmative one, and the ▮ burden of proving it is on defendant if he would rely on it. People v. Braddock, 41 Cal. (2d) 794, 264 Pac. (2d) 521; People v. Gutierrez, 128 Cal. App. (2d) 387, 275 Pac. (2d) 65;

People v. Lee, 9 Cal. App. (2d) 99, 48 Pac. (2d) 1003. There being no proof in the record sustaining the theory of entrapment the court properly refused to instruct the jury on the question.

Also it should be noted that defendant himself did not suggest that he was induced or lured into the offense through entrapment. He denied that he sold liquor to Gallagher. The rule is that the defense of entrapment is not available to one who denies commission of the offense. Annotation 33 A.L.R. (2d) 910. Had the issue of entrapment been properly presented in the case by some evidence on behalf of defendant, then it would also have been proper for the state to show, as it attempted to do here, that the officers were acting in good faith and in the belief based upon reasonable information that defendant was engaged in selling whiskey to minors contrary to law. Compare Annotation 33 A.L.R. (2d) 908.

The suggestion that the officers of the law acted in violation of the law declared in R.C.M. 1947, section 10-617, in procuring the evidence against defendant is far fetched. But if they did violate the law, that does not give the defendant here the green light to violate the law with impunity.

The defendant attempted to show that the testimony which would have been given by the witness Gallagher was wilfully suppressed by the state, and that as a result of this the jury should have been admonished that the so-called suppressed evidence should be presumed to be adverse to the state.

There was no obligation upon the state to call the witness Gallagher. The witness was available to either party. Upon the trial of a misdemeanor as is the charge in this case the state may not be compelled to call any particular witness even though his name is endorsed on the information. Compare State v. Vandervoort, 57 Mont. 540, 189 Pac. 764. See C. J., Criminal Law, section 2132 et seq., page 845; 23 C.J.S., Criminal Law, section 1017. Counsel for the defendant may comment in his argument to the jury upon the failure of the state to put a witness upon the stand, as undoubtedly defendant's counsel did

in this case. The point is not that the state has suppressed evidence. The issue is rather what weight the jury shall give to the prosecution's witness, absent the testimony of Gallagher.

There is no merit in the argument that the state's case presented only the evidence of accomplices. See State v. Jenkins, 66 Mont. 359, 213 Pac. 590.

The record does not show that there was any evidence offered by defendant and excluded tending to show that Gallahger appeared of legal age as stated in the dissenting opinion of Mr. Justice Anderson, aside from the possibility that Jerry's photograph taken more than a year later might have had that tendency. Adroit counsel for defendant does not contend that there was any evidence excluded by the court which tended to show that Jerry Gallagher appeared of legal age aside from his photograph. As before stated, that exhibit was properly excluded.

We have considered other questions discussed in the briefs but find no prejudicial error in the record.

The judgment and order appealed from are affirmed.

MR. CHIEF JUSTICE ADAIR, and MR. JUSTICE BOTTOMLY, concur.

MR. JUSTICE DAVIS:

I dissent. As I read this record the State of Montana violated its own Criminal Code and by that violation brought about the commission of the offense for which the defendant Parr is now punished by the State of Montana.

The naked facts before us are that the chief probation officer and the county attorney of Fergus County took the boy Jerry Gallagher, then fifteen years of age, from the juvenile department of the county jail where he was lodged, and with an inspector for the state liquor board went to Grass Range, Montana, where the probation officer gave the boy a ten dollar bill and told him to go into the defendant's saloon and buy a bottle of whiskey. This purchase the boy made of the defendant, as is the testimony of the county attorney and the inspector who

witnessed the transaction through the tavern window. The boy himself was not a witness and accordingly did not testify at the trial.

Wholly apart from any crime of which Parr may be guilty this case presents two other aspects which I think the majority opinion ignores. The one is that the officers of the law themselves (1) caused the boy Gallagher while in their custody to go into the defendant's saloon where spirituous or intoxicating liquors were sold, and (2) by his purchase there permitted him to patronize that saloon, both in violation of R.C.M. 1947, section 10-617. At this point this record finds no counterpart in the decisions of this court heretofore.

The other aspect of this appeal, which I think the majority has too lightly passed over, is that by their own violation of the statutes of the state the officers of the state themselves induced Parr to offend against the law of the state by his sale, as they say, to a minor in violation of R.C.M. 1947, sections 4-413 and 94-35-106, as amended.

I agree with the majority opinion that the state was not required to produce the minor as a witness upon Parr's trial. But by his absence the state's case was not strengthened.

Parenthetically I think a fifteen-year old boy should be about better business than purchasing whiskey that a prosecution may follow. It is no answer at this point for the state to say that the boy's mother consented that he take the part he did in this affair. Faced as she was by "the law" with her son in jail her consent was not to be withheld.

But if the case were otherwise, neither the mother's consent nor the participation and approval of the officers could lawfully sanction Jerry Gallagher's visit to Parr's tavern and his purchase there of a fifth of Seagram's Seven Crown whiskey; for the visit and the purchase, I repeat, even at the instigation of the officers were both contrary to section 10-617, supra, and therefore forbidden without exception. That statute denies anyone the right to send a minor upon such a mission. The

state's case then is that by its own criminal act the defendant has been persuaded himself to break the law.

Here I think Mr. Justice Brandeis, late of the Supreme Court of the United States, has shown the way by his dissent in Casey v. United States, 276 U.S. 413, 421-425, 48 S. Ct. 373, 72 L.Ed. 632, with whom Mr. Justice Butler joined to this effect, 276 U.S. 423, 48 S. Ct. 376:

"* * * The obstacle to the prosecution lies in the fact that the alleged crime was instigated by officers of the government; that the act for which the government seeks to punish the defendant is the fruit of their criminal conspiracy to induce its commission."

If Parr sold whiskey to the boy Gallagher, then as Mr. Justice Brandeis said further, 276 U.S. 423, 424, 48 S. Ct. 376,

"* * * it is because he yielded to the temptation presented by the officers. Their conduct is not a defense to him. For no officer of the government has power to authorize the violation of an act of Congress, and no conduct of an officer can excuse the violation. But it does not follow that the court must suffer a detective-made criminal to be punished. To permit that would be tantamount to a ratification by the government of the officers' unauthorized and unjustifiable conduct."

As did the defendant Casey, so the defendant Parr "denied every material fact testified to by witnesses for the prosecution and supported his oath by other evidence." See 276 U.S. at page 424, 48 S. Ct. at page 376.

Accordingly, I would vacate this conviction and dismiss this information for the reasons which Mr. Justice Brendeis summarized thus in the Casey case, 276 U.S. 425, 48 S. Ct. 376:

"* * * *This prosecution should be stopped, not because some right of Casey's has been denied, but in order to protect the government. To protect it from illegal conduct of its officers. To preserve the purity of its courts."

I do not know of any opinion written in this court which holds to the contrary of my position here. But if such has not been the view of this bench heretofore, I think the opportunity is

now at hand to bring the law into line with a fundamental concept of natural justice. Compare the reasoning of Mr. Justice Roberts spoken for himself and for Mr. Justice Brandeis and Mr. Justice Stone as well in Sorrells v. United States, 287 U.S. 435, 453-459, 53 S. Ct. 210, 77 L.Ed. 413, 86 A.L.R. 249, citing O'Brien v. United States, 7 Cir., 51 F. (2d) 674.

I would reverse and dismiss.

MR. JUSTICE ANDERSON (dissenting) :

I agree generally with that which has been said by Mr. Justice Davis.

Great though some may feel the need for the use of decoys in the suppression of illicit sales of intoxicants to minors, I nonetheless vehemently condemn such a practice when its result is overshadowed by being weighed in proportion with the damage it may do to the young boy or girl who is the instrument used by the officers who seek the youngster's aid.

The facts leading up to the use of a decoy in the instant case do violence to the precept upon which our modern law concerning juveniles is based.

Jerry Gallagher was not just a minor. He was not just a boy as the majority opinion would like the reader to think. He was a juvenile locked up in jail from where he was taken to perform his act, to where he was returned after he played his part, and from where he was released a few days later. Our statutes say he is not a criminal; he is a misguided, misdirected boy who needs care and guidance. But here he is directed by his keepers to commit a crime in violation of R.C.M. 1947, sections 4-413 and 10-617, for which upon its commission his most likely thought was he would be released from jail and excused for the transgression that had lodged him there in the first place.

Left unanswered is what effect has the whole scheme had upon young Gallagher, and more important what effect, if left unchallenged, will similar schemes have upon young Gallaghers of the future.

Apart from what is said above there is the well-defined exception to the general rule regarding the use of decoys by the government. Nothwithstanding Mr. Justice Angstman's comments to the contrary, there were limitations placed upon defendant's counsel in his effort to put facts before the jury so as to show that this case came within the exception.

These efforts to show that Gallagher appeared of legal age were objected to and sustained by the court below. These efforts should have been allowed to go to the jury and the jury should have been instructed on the question of entrapment wherein concealed disability was a factor. United States v. Healy, D.C. 1913, 202 F. 349; Voves v. United States, 7 Cir., 1918, 249 F. 191.

I would reverse and dismiss.

I am authorized to state that Mr. Justice Davis agrees with my views as here expressed.